Cheryl L. Kozdrey (SBN 323308)
ckozdrey@sdvlaw.com
SAXE DOERNBERGER & VITA, P.C.
One BetterWorld Circle, Suite 300
Temecula, CA 92590
Phone: (951) 365-3145
Fax: (203) 287-8847

Attorney for Plaintiff
GOLDEN STATE GLAZING, INC.,

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOLDEN STATE GLAZING, INC.;<br><br>Plaintiff,<br><br>v.<br><br>HUDSON EXCESS INSURANCE COMPANY;<br>JAMES RIVER INSURANCE COMPANY,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGEMENT, BREACH OF CONTRACT, AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING, WITH JURY DEMAND** |

WHEREFORE Plaintiff Golden State Glazing, Inc. ("Plaintiff") by and through its attorneys Saxe Doernberger & Vita, P.C., hereby allege and complain against Defendants Hudson Excess Insurance Company (hereinafter "Hudson") and James River Insurance Company (hereinafter "James River") as follows:

/ / /

---

PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

1

## JURISDICTION AND VENUE

1. At all times relevant to this action, the Plaintiff is a California corporation with its principal place of business in Yucaipa, California.

2. Upon information and belief, at all times relevant to this action, Defendant Hudson is an insurance company organized under the laws of the State of Delaware and its principal place of business is in New York, and was at all times mentioned herein qualified to do business in California.

3. Upon information and belief, at all times relevant to this action, Defendant James River is an insurance company organized under the laws of the State of Virginia and its principal place of business is in North Carolina, and was at all times mentioned herein qualified to do business in California.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as there is complete diversity of citizenship between the parties because Plaintiff is domiciled in the State of California. Defendant Hudson is domiciled in Delaware and New York, and Defendant James Rivers is domiciled in the State of Virginia and North Carolina. The amount in controversy, exclusive of interest and costs, exceeds the jurisdictional minimum of $75,000.

5. The venue in this judicial district is proper pursuant to 28 U.S.C. 1391(b) as a substantial part of the events and omissions giving rise to the claims that occurred within this judicial district.

## FACTUAL ALLEGATIONS

6. This lawsuit arises from an insurance coverage dispute between Plaintiff and its insurers, Hudson and James River, who have unreasonably refused to defend (and/or indemnify) Plaintiff against an underlying lawsuit alleging Plaintiff's liability for property damage claimed by construction project owner, Whisky Hotel LLC ("Whisky").

7. Hudson's conduct constitutes a breach of its insurance contract and its duty of good faith and fair dealing, and gives rise to actual disputes and controversies warranting a declaratory judgment..

8. James River's conduct gives rise to a breach of its insurance contract and actual disputes and controversies requiring declaratory judgement.

### (History of Relevant Underlying Actions)

9. The underlying action for which Plaintiff seeks coverage is captioned <u>KCS West, Inc. v. Whisky Hotel LLC</u>, Case No. 2d3STCV17500, and is comprised of the following relevant pleadings, among others (the

---

PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

"Underlying Action").

10. On or about, July 24, 2023, KCS sued Whisky on for claims related to disputes under a January 30, 2020 contract between Whisky (as owner) and KCS (as general contractor) (hereinafter, the "Prime Contract" attached as **Exhibit A**) for construction work to be performed by KCS and its subcontractors (including Plaintiff) for a ground-up construction of one seven-story modular concrete/steel hotel building located at 1717 Wilcox Avenue, Hollywood, California 90028 (the "Project"). On or about September 15, 2023, Whisky filed a Cross-Complaint followed by a December 21, 2023 First Amended Cross-Complaint, against KCS, alleging "property damage" to the Project.

11. On March 15, 2024, KCS filed a cross-complaint against various subcontractors, including Plaintiff, in an effort to transfer liability to Plaintiff for the property damage claimed by Whisky in the above-referenced pleadings.

12. Plaintiff's alleged liability for the property damage claimed by Whisky purportedly arises from the risk transfer provisions of its March 17, 2021 subcontract with KCS (hereinafter, the "Subcontract" attached as **Exhibit B**) which required Plaintiff to indemnify both KCS and Whisky for losses arising from property damage purported caused by Plaintiff's work."

### (The Hudson OCIP Policy)

13. Various terms and conditions from the Prime Contract were incorporated into the Subcontract.

14. Relevant here, the Prime Contract obligated Whisky to procure primary and excess commercial general liability insurance coverage and builder's risk coverage via an Owner Controlled Insurance Program (hereinafter, the "OCIP"), under which all enrolled contractors and subcontractors would be insureds.

15. An OCIP Manual was provided as part of the Prime Contract documents and incorporated into the Subcontract documents, wherein the terms and intent of the OCIP policy were summarized as follows:

    a. "By participating in the OCIP, you [i.e., Plaintiff and other enrolled insureds] do not have to buy additional insurance or completed operations coverage for your ongoing contractual indemnity obligations for this Project."

    b. "Another advantage to the OCIP is that the allocation of fault in the construction defect case is not necessary. Time-consuming and frustrating litigation between the Owner, Contractor, Subcontractor, and sub tier contractors of all level will be reduced significantly."

c. "Enrolled construction participants in the OCIP are insured on the same policy. The Program insurance carrier provides a single defense attorney to defend the interests of the Contractor and OCIP Participants. Therefore, there is no need for separate counsel and cross complaints within the construction team."

d. "Completed operations coverage on this Project does not have to be purchased by OCIP Participants. There is no need to worry about the future insurance market and exclusions for this Project."

16. The OCIP Manual restates the Prime Contract requirement "that you, as a Subcontractor, and your eligible sub tier contractor [participate] in the OCIP."

17. The OCIP Manual is incorporated herein by reference, a copy of which is attached hereto as **Exhibit C**.

18. Pursuant to Whisky's obligation under the Prime Contract, Whisky procured an OCIP policy from Hudson with the policy number HCG 100025 01, with an effective policy period starting on May 19, 2020, until May 19, 2023 (hereinafter, the "OCIP"), which on information and belief has been extended.

19. The OCIP is incorporated herein by reference, a copy of which is attached hereto as **Exhibit D**.

20. By its terms, the OCIP's insuring agreement provides broad coverage for "those sums [Plaintiff] becomes legally obligated to pay as damages because of . . . 'property damage'" caused by an occurrence.

21. Accordingly, Plaintiff timely tendered notice of the Underlying Action to Hudson and otherwise complied with all conditions precedent to triggering coverage under the OCIP.

22. Hudson does not disagree that Plaintiff is an insured under the OCIP, or that the insuring agreement is satisfied.

23. Rather, Hudson disclaims coverage based on an overly broad application of the OCIP's purported "Cross-Suit" exclusion, without due regard to its exception, with carves-back coverage for "property damage claimed by" Whisky (and/or KCS).

24. Specifically, Hudson relies on the following policy forms as the basis for its erroneous coverage disclaimer::

a. Form HCG-3985 09 19, which provides:

This insurance does not apply to:

Any liability for "property damage" claimed by one Named Insured against another Named Insured. This exclusion does not apply to "property damage" claimed by the entity(s) listed

PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
4

below:

KCS West and Whisky Hotel LLC

b. Form HCG-3985 02 22, which provides:

This insurance does not apply to:

Any liability for "property damage" claimed by one Named Insured against another Named Insured. This exclusion does not apply to "property damage" that occurs after the completion of a "Scheduled Project" that is claimed by the entity(s) listed below:

Whisky Hotel LLC

25. While these provisions initially purport to exclude coverage for property damage claimed by one Named Insured against another, both provisions contain a broad carve-back that reinstates coverage where the alleged "property damage" for which Golden faces liability is *claimed by* Whisky (and/or KCS West).

26. Thus, even if arguendo the above exclusion(s) were initially triggered, they do not apply here because the entity claiming property damage is Whisky, with KCS simply serving as Whisky's conduit through which liability for such property damage is being imposed on Plaintiff. Notwithstanding, Hudson has wrongfully denied coverage to Plaintiff in connection with the Underlying Action.

27. Specifically, on June 20, 2024, Hudson denied Plaintiff's claim for coverage based on the "Cross Suit" exclusions.

28. On July 23, 2024, Plaintiff's counsel sent Hudson a demand letter seeking reconsideration of its coverage position and prompt acceptance of its duties to defend (an exceedingly broad obligation under California law) and potentially indemnify the Plaintiff in the Underlying Action.

29. On August 6, 2024, Hudson reaffirmed its denial of coverage, leaving Plaintiff without a contractually-owed defense in the Underlying Action.

**(The James River CGL Policy)**

30. Separately, Plaintiff purchased its own Commercial General Liability policy from James River, bearing Policy number 0086226-5, which was effective from October 13, 2023, to October 13, 2024 (hereinafter, the "CGL" attached as **Exhibit E**).

31. It was Plaintiffs intent that this policy would provide coverage for losses not otherwise covered under the OCIP policy.

32. Similar to the OCIP's insuring agreement, the James River CGL policy's insuring agreement provides broad coverage for "those sums [Plaintiff] becomes legally obligated to pay as damages because of . . . 'property damage'" caused by an occurrence.

33. The policy also includes an endorsement entitled "Exclusion – Operations *Covered* by a Consolidated Insurance Program (Wrap-Up, OCIP, CCIP)", Form No. AP1007US 05-14.

34. As indicated by its title, the purpose of this endorsement is to limit or exclude coverage that is otherwise covered by an OCIP policy.

35. Accordingly, the endorsement provides:

> This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at any location or project in which you participate where a Consolidated Insurance Program (CIP), commonly referred to as an Owner Controlled Insurance Program (OCIP), Contractor Controlled Insurance Program (CCIP), or Wrap-Up program, has been provided by the contractor, project manager or owner of the construction project in which you are involved.
>
> This exclusion applies whether or not:
>
> **(1)** The Consolidated Insurance Program provides coverage identical to that provided by this policy;
>
> **(2)** The Consolidated Insurance Program has limits adequate to cover all claims;
>
> **(3)** The Consolidated Insurance Program remains in effect; or
>
> **(4)** You enroll in the Consolidated Insurance Program.

36. Critically, although Whisky provided the Hudson OCIP policy, that policy has denied coverage for Plaintiff's claim and, therefore, the exclusion pertaining to "Operations *Covered* by a Consolidated Insurance Program (Wrap-Up, OCIP, CCIP)" does not apply to bar coverage for Plaintiff's claim under the James River CGL policy.

37. Accordingly, Plaintiff timely tendered notice of the Underlying Action to Hudson and otherwise complied with all conditions precedent to triggering coverage under the James River CGL policy.

38. Notwithstanding, James River disclaimed coverage based on this exclusion.

39. Specifically, on or about June 26, 2024, ProSource Insurance Services, on behalf of the Plaintiff,

submitted a claim to James River.

40. On June 27, 2024, James Rivers acknowledged receipt of the claim and asked for various pieces of information, including the "contract for the project in question, when you started the work, when you completed your work, any subcontractors that you may have used, and other relevant information(sic)."

41. On June 27, 2024, Plaintiff promptly provided the requested information to James River.

42. On August 23, 2024, James River denied Plaintiff's request for coverage.

43. Thus, despite being dually insured for the liability alleged against it, Plaintiffs is presently left with no coverage for its defense and/or indemnity against the Underlying Action.

## FIRST CAUSE OF ACTION

## DECLARATORY JUDGMENT – DUTY TO DEFEND

### (Against Hudson)

44. Plaintiff hereby incorporates Paragraphs 1 through 43, inclusive, as though fully set forth herein.

45. A dispute has arisen between Plaintiff and Hudson regarding whether Hudson is obligated to defend Plaintiff in the Underlying Actions.

46. An actual case and justiciable controversy exists regarding Hudson's obligations under the OCIP due and owed to the Plaintiff. A declaratory judgment, pursuant to 28 U.S. Code § 2201, is necessary and appropriate to determine the rights and duties of Plaintiff and Hudson pursuant to the OCIP.

## SECOND CAUSE OF ACTION

## DECLARATORY JUDGMENT – DUTY TO DEFEND

### (Against James River)

47. Plaintiff hereby incorporates Paragraphs 1 through 46, inclusive, as though fully set forth herein.

48. A dispute has arisen between Plaintiff and James River regarding whether Hudson is obligated to defend the Plaintiff in the Underlying Actions.

49. An actual case and justiciable controversy exists regarding James River's obligations under the CGL due and owed to the Plaintiff. A declaratory judgment, pursuant to 28 U.S. Code § 2201, is necessary and appropriate to determine the rights and duties of Plaintiff and James River pursuant to the CGL.

///

///

## THIRD CAUSE OF ACTION

## BREACH OF CONTRACT – DUTY TO DEFEND

### (Against Hudson)

50. Plaintiff hereby incorporates Paragraph 1 through 49, inclusive, as though fully set forth herein.

51. Hudson, in consideration of premiums paid by Whisky, duly executed and delivered the OCIP that undisputedly provides "Named Insured" status to the Plaintiff.

52. Plaintiff is, and at all relevant times was, in compliance with all conditions precedent for coverage under the OCIP.

53. Hudson is obligated, pursuant to the terms of the OCIP, to defend and potentially indemnify the Plaintiff pursuant to the terms of the OCIP.

54. Despite demands, Hudson unreasonably refused and/or otherwise failed to assume the defense of its insured, the Plaintiff, under the OCIP terms.

55. Hudson's refusal and/or failure to assume the defense of the Plaintiff constitutes a breach of the OCIP.

56. As a result of Hudson's refusal to provide coverage, Plaintiff continues to suffer growing actual and consequential damages, and will continue to suffer damages in the future, all in a sum to be determined at the time of trial.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT – DUTY TO DEFEND

### (Against James River)

57. Plaintiff hereby incorporates Paragraph 1 through 56, inclusive, as though fully set forth herein.

58. James River, in consideration of premiums paid by Plaintiff, duly executed and delivered the CGL that undisputedly provides "Named Insured" status to the Plaintiff.

59. Plaintiff is, and at all relevant times was, in compliance with all conditions precedent for coverage under the CGL.

60. James River is obligated, pursuant to the terms of the CGL, to defend and potentially indemnify the Plaintiff pursuant to CGL terms.

61. Despite demands, James River unreasonably refused and/or otherwise failed to assume the

defense of its insured, the Plaintiff, under the CGL terms.

62. James River's refusal and/or failure to assume the defense of the Plaintiff constitutes a breach of the CGL.

63. As a result of James River's refusal to provide coverage, Plaintiff continues to suffer growing actual and consequential damages, and will continue to suffer damages in the future, all in a sum to be determined at the time of trial.

## FIFTH CAUSE OF ACTION

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

### (Against Hudson)

64. Plaintiff hereby incorporates Paragraph 1 through 63, inclusive, as though fully set forth herein.

65. As this suit is brought under diversity jurisdiction, state law applies. By operation of California Ins. Code § 790.03, Hudson and its agents are under a duty of good faith and fair dealing, requiring Hudson to deal honestly and in good faith with Plaintiff.

66. The duty of good faith and fair dealing includes the duty to perform prompt and objective investigation, and the duty to provide a defense to the Plaintiff as contractually promised, without unreasonably withholding or delaying such benefits.

67. Hudson breached the implied covenant of good faith and fair dealing in various ways, including, but not limited to:

   a. By unreasonably denying that it owes a duty to defend the Plaintiff;
   b. By failing to conduct a fair, thorough, and objective investigation, as Hudson's conclusion regarding its duty to defend is patently unreasonable in light of California law;
   c. By violating § 790.03(h)(1) of the Code (by blanket-citing clearly inapplicable exclusions and limitations in a hasty attempt to preemptively deny coverage);
   d. By violating § 790.03(h)(6) of the Code (by forcing Plaintiff to institute litigation in order to obtain its contractually bargained-for defense);

68. Plaintiff is informed and believes that discovery will permit the plaintiff to demonstrate Hudson's breach of duty of good faith and fair dealing.

69. Hudson's conduct was undertaken by its agents and representatives, who were responsible for

claims, supervisions, operations, communications, and decisions on behalf of Hudson, which had advanced knowledge of said actions and conduct and ratified, authorized, and approved the same.

70. As a direct and proximate result of the aforementioned unreasonable-conduct by Hudson, Plaintiff has suffered, and will continue to suffer, damages in a sum to be determined at trial.

71. As a further proximate result of the aforementioned unreasonable-conduct by Hudson, Plaintiff was compelled to retain legal counsel to obtain a bargained-for defense due under the OCIP.

72. Hudson is liable to Plaintiff for those attorneys' fees incurred by Plaintiff to obtain the benefits under the OCIP in a sum to be determined at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and the following specific relief against Defendants:

1. A declaration that Hudson is obligated to defend and potentially indemnify Plaintiff in accordance with its policy;
2. A declaration that James River is obligated to defend and potentially indemnify Plaintiff in accordance with its policy;
3. Monetary damages associated with Hudson's and James River's various breaches;
4. All defense fees incurred by Plaintiff to date, and defense fees related to the Underlying Action that Plaintiff continues to incur;
5. Pre-judgment and/or post-judgment interest as permitted by law;
6. Consequential damages, including but not limited to, attorneys' fees incurred in connection with the present coverage lawsuit.
7. Such other legal and equitable relief that this Court deems just and proper.

## JURY DEMAND

WHEREFORE, PLAINTIFF hereby demands a trial by jury for all claims herein for which a jury is permitted.

Dated: April 16, 2025.   SAXE DOERNBERGER & VITA, P.C.

By: _____
Cheryl L. Kozdrey
Attorney for Plaintiff, GOLDEN STATE GLAZING

PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT, BREACH OF CONTRACT, AND BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

10